IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02934-KLM

C. L. P.,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court[1] on the **Social Security Administrative Record** [#8], filed January 3, 2022, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), denying Plaintiff's claims for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq.  On March 16, 2022, Plaintiff filed an Opening Brief [#12] (the "Brief").  Defendant filed a Response [#15] in opposition.  No Reply was filed.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  The Court has reviewed the entire case file and the applicable law and is sufficiently advised in the premises.  For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

**I. Background**

---

[1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  *See* [#9, #16, #17].

1

On March 29, 2019, Plaintiff filed an application for disability insurance benefits under Title II, alleging disability beginning December 1, 2018.  Tr. 15.[3]  On December 17, 2020, an Administrative Law Judge (the "ALJ") issued an unfavorable decision.  Tr. 32.  The ALJ determined that Plaintiff meets the insured status requirements of the Act through December 31, 2024, and that he had not engaged in substantial gainful activity ("SGA") since December 1, 2018, the alleged onset date.  Tr. 17.

The ALJ found that Plaintiff suffers from three severe impairments: (1) multiple sclerosis (MS), (2) an intellectual disorder, and (3) mild neurocognitive disorder.  Tr. 17.  However, the ALJ also found that Plaintiff's impairments did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526)."  Tr. 18.

The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") to perform "light work" with the following limitations:

> [M]eaning the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently.  He can stand and/or walk for four hours total in an eight-hour workday, and he can sit for about six hours total in an eight-hour workday.  He can frequently balance, stoop, kneel, crouch, and crawl.  He can occasionally climb ramps and stairs.  He can never climb ladders, ropes, or scaffolds, or work at unprotected heights, or around dangerous unprotected major manufacturing machinery.  The claimant can tolerate occasional exposure to extreme heat.  He can understand, remember, and carry out simple routine repetitive tasks that can be learned and mastered in up to 30 days' time or less.  The work involves infrequent changes in work routine.  He can work in proximity to others, tolerating occasional contact with the general public.  At such levels, the claimant can maintain concentration, persistence, and pace within customary norms, can make simple work-related decisions, can plan and set goals, can travel, and can recognize and avoid ordinary workplace hazards.  The work allows the use of a cane to get to and from the workstation.

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 8 through 8-8, by the sequential transcript numbers instead of the separate docket numbers.

2

Tr. 21.  Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff could not perform his past relevant work as a nurse assistant or cardiac monitor technician, but that he was able to perform the representative occupations of electronics worker, printed circuit board preassembler, and final assembler.  Tr. 30-31.  She therefore found Plaintiff not disabled at step five of the sequential evaluation.  Tr. 31.  The ALJ's decision has become the final decision of the Commissioner for purposes of judicial review.  20 C.F.R. § 404.981.

## II.  Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).  Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)).  The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings.  42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  See *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."  *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency."  *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)).  In other words, the Court does not reexamine the issues de novo.  *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993).  Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo*."  *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

A.   **Legal Standard**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits.

*See* 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary.  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.").  The Commissioner bears the burden of proof at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity."  *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)).  If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments."  *Id.*  "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities."  *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521).  Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings."  *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142).  "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work."  *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142).  "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy."  *Id.*

**B.     Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled.  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  However, the ALJ need

not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148.  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1140 (internal quotation marks omitted).  "It requires more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ."  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole."  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  Further, evidence is not substantial if it "constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  Analysis

Plaintiff argues that the ALJ erred at step four by failing to (1) evaluate the opinion of Lisa Townsend, Psy.D. ("Townsend"), (2) fully account for Plaintiff's need for a cane in the RFC, and (3) properly evaluate Plaintiff's self-described symptoms and limitations.  *Brief* [#12] at 1.

**A.     The Opinion of Dr. Townsend**

Plaintiff argues that the ALJ failed to properly evaluate the opinion of Dr. Townsend.  *Brief* [#12] at 3-8.  With respect to Dr. Townsend, the ALJ stated:

> In an undated report, the claimant underwent a neuropsychological screening with Dr. Lisa Townsend, Psy.D.  The claimant's evaluation supported a diagnosis of mild cognitive impairment.  The claimant reported short-term memory loss, fatigue, and pain over the past four months.  His

> activities of daily living were remarkable for minor assistance with handling medications. During the evaluation, the claimant's receptive and expressive language skills were intact. His thought processes were logical and coherent and his thought content was unremarkable. The claimant's mood was reported to be "weird being here" with an affect showing engagement but with hesitation. Neuropsychological testing was performed, with the results recorded, as detailed in the report. His abilities ranged from impaired to above average. Dr. Townsend stated it was difficult to discern new changes in cognitive function and pre-existing conditions of developmental delay. There was minimal functional decline. It was recommended he engage in 20-30 minutes of cognitive and physical training, and a book titled "Living with Mild Cognitive Impairment" was discussed.
>
> . . .
>
> In September 2019, the claimant underwent another neuropsychological exam with Dr. Townsend. Based on the exam results, it supported a differentiation diagnosis of continued mild cognitive impairment and early dementia. Dr. Townsend stated that self-endorsements of depression/ apathy and anxiety could account for discrepancies in test scores. The results of the claimant's testing are provided in further detail in the report, but out of the 26 tests administered, test scores showed 10 areas of decline and four areas of improvement. He now reported more depression, anxiety, and apathy since his last visit. Dr. Townsend gave similar recommendations as previous.

Tr. 24-26 (internal citations omitted).

Plaintiff argues that the ALJ was required to evaluate the persuasiveness of Dr. Townsend's findings pursuant to 20 C.F.R. § 1520c, while Defendant argues that Dr. Townsend's findings do not constitute "medical opinion" requiring such an evaluation. *See* 20 C.F.R. § 1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). Thus, the question here is whether Dr. Townsend's examinations and reports constitute "medical opinion" under 20 C.F.R. § 404.1513(a)(2) or "other medical evidence" under 20 C.F.R. § 404.1513(a)(3). Pursuant to 20 C.F.R. § 404.1513(a)(2):

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . . (i) [y]our ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) [y]our ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) [y]our ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) [y]our ability to adapt to environmental conditions, such as temperature extremes or fumes.

Pursuant to 20 C.F.R. § 404.1513(a)(3), "[o]ther medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."

The entirety of Plaintiff's Brief [#12] simply assumes that Dr. Townsend's statements constitute "medical opinion" under 20 C.F.R. § 404.1513(a)(2) and therefore that the ALJ erred in failing to provide a formal evaluation of the persuasiveness of such opinion. Plaintiff did not file a Reply to respond to Defendant's argument that Dr. Townsend's statements do not actually constitute "medical opinion." On review, the Court agrees with Defendant that "the vague statements at issue [by Dr. Townsend] were not opinions as to specific workplace limitations and were not, then, 'medical opinions' as that phrase is narrowly defined under the applicable regulations." *Response* [#15] at 9. Here, the most pertinent part of the "medical opinion" definition is 20 C.F.R. § 404.1513(a)(2)(ii), which concerns "[y]our ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work

pressures in a work setting." Although Dr. Townsend *generally* discussed many of these types of cognitive issues, she did not provide any *specific* opinion regarding how those impairment-related limitations or restrictions would affect Plaintiff's ability to perform the mental demands of work activities. Rather, her statements clearly fall instead under the parameters of 20 C.F.R. § 404.1513(a)(3) as "judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." Thus, even though Dr. Townsend's statements suggest some work-related issues, the ALJ did not err by failing to evaluate Dr. Townsend's statements as "medical opinion" as narrowly defined by the regulation.

Defendant further argues that Dr. Townsend's statements are consistent with the ALJ's RFC. *Response* [#15] at 10 (citing *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (stating that the Court may not reweigh the evidence or substitute its judgment for that of the ALJ); *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (stating that the Court "must view the record in the light most favorable to [the ALJ's] determination" and may not accept a plaintiff's invitation to rely on perceived inconsistencies). Again, Plaintiff did not file a Reply to this argument, and, on review, the Court agrees with Defendant that Dr. Townsend's statements are not obviously inconsistent with the ALJ's decision, particularly reviewing the record in a light most favorable to that decision.

As Defendant points out, Dr. Townsend encouraged Plaintiff's work to be supervised, which does not require a finding, as Plaintiff suggests, that Plaintiff required "extraordinary levels of direct supervision." *Response* [#15] at 10 (quoting *Brief* [#12] at 5). Rather, Dr. Townsend merely stated she "[w]ould encourage supervision of duties at work given test scores." Tr. 445. In fact, she did not even state that Plaintiff would *require*

9

supervision to be able to work, but specifically said that supervision would be "precautionary." Tr. 449 ("Strongly encourage supervision of his duties as a precautionary measure."). Although the ALJ could perhaps have interpreted this statement differently, there is nothing in Dr. Townsend's statements here which required a finding that Plaintiff must have "extraordinary levels of direct supervision" to be able to work.

In addition, there is no indication that Dr. Townsend's encouraging Plaintiff not to drive at night affects the representative occupations identified by the ALJ or otherwise conflicts with the RFC. Tr. 446. To the extent Dr. Townsend may have been saying that memory issues could impact work, this is consistent with the ALJ's limitation to simple work with few changes to the work routine. Tr. 21. Further, Dr. Townsend's encouraging Plaintiff to use a wall calendar to help keep track of daily routines does not suggest any type of workplace restriction, particularly with the simple work to which the ALJ limited Plaintiff.

As Plaintiff notes, the SSA "will assess your residual functional capacity based on all of the relevant medical and other evidence." *Brief* [#12] at 3 (citing 20 C.F.R. § 404.1545(a)(3)). The Court finds that the ALJ appropriately referenced and discussed Dr. Townsend's statements in her decision, given that such statements constituted "other medical evidence." Tr. 24-26.

Accordingly, the Court finds that the ALJ did not commit reversible error in connection with Plaintiff's first argument regarding Dr. Townsend.

**B.    Need for a Cane**

The ALJ included a limitation in the RFC that the work must "allow[ ] the use of a cane to get to and from the workstation." Tr. 21. In explaining this conclusion, the ALJ

stated: "[Plaintiff] began using a cane, when PT recommended he bring the cane so they could show him how to properly use it. He has not had any significant decline on repeated neurologic exam since that time. However, as he uses walking sticks to walk, or a cane, the undersigned has adopted such a restriction." Tr. 27.

Plaintiff argues that the ALJ erred by failing to account for Plaintiff's purported need for a cane for balance while standing, such as at a workstation, as opposed to only when walking. *Brief* [#12] at 9. Defendant argues at length that the record does not support such a limitation. *Response* [#15] at 11-13. However, Defendant also notes that the issue is moot because none of the representative occupations identified by the ALJ require Plaintiff to stand while working. *Id.* at 13. Plaintiff did not file a Reply to respond to this argument.

The three representative occupations identified by the ALJ were electronics worker, printed circuit board assembler, and final assembler. Tr. 31. As Defendant points out, the VE opined that all three of those jobs were "unskilled sedentary and seated light forms of work of a non-customer service nature." Tr. 69. Thus, even were the Court to find that the ALJ erred by failing to account for Plaintiff's purported need for a cane for balance while standing, such error would be harmless because it would have no impact on the ALJ's finding that jobs exist in significant numbers in the national economy that Plaintiff can perform while seated. Tr. 30. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (discussing the application of harmless error analysis in an administrative review setting).

Accordingly, the Court finds that the ALJ did not commit reversible error in connection with Plaintiff's second argument regarding Plaintiff's cane usage.

**C.   Self-Described Symptoms and Limitations**

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's reporting of his subjective symptoms. *Brief* [#12] at 14-22. Social Security Ruling (SSR) 16-3P, 2017 WL 5180304, at *7-8 (Oct. 25, 2017), provides:

> In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3) and 416.929(c)(3). These factors include: 1. Daily activities; 2. The location, duration, frequency, and intensity of pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. We will consider other evidence to evaluate only the factors that are relevant to assessing the intensity, persistence, and limiting effects of the individual's symptoms.

"But the ALJ need not consider every one of these factors." *Deherrera v. Comm'r, SSA*, 848 F. App'x 806, 809 (10th Cir. 2021) (citing SSR 16-3P, 2017 WL 5180304, at *8 ("If there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor in the determination or decision because it is not relevant to the case.")). Further, "an ALJ need not engage in 'a formalistic factor-by-factor recitation of the evidence' when evaluating the functional effects of a claimant's subjective symptoms." *Deherrera*, 848 F. App'x at 809-10 (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

The ALJ noted Plaintiff's self-described symptoms and limitations as follows:

> At the hearing, the claimant testified that he completed high school and he required assistance while in school. When working, the claimant said he had some difficulty talking to the doctors at work. He said he would doze

12

off sometimes at work, and most days towards the end of his employment. The claimant said he was sometimes incontinent of urine at work and he would bring extra clothes with him. He testified he becomes very tired from MS after he does anything, and he said his body feels heavy. The claimant testified he could not think and he had a speech impediment and he stuttered. He said he experiences back pain when he walks that can travel down his legs. He testified he was 6' and he weighed around 275 pounds. The claimant said he would take a three hour nap during the day and he spent other time resting. He said he had problems with walking and he had a cane and walking stick. The claimant said he had balance problems and lower leg weakness. The claimant testified he could walk for about 20 minutes if he took breaks and he would need to rest for four or five hours and he said he was so sore afterwards, he could walk for maybe another 10 minutes. He said he would forget things and he described memory difficulties. The claimant described issues with reading, spelling, and writing. He testified he sometimes had difficulty staying focused on conversations with others. He said he had urinary accidents about once a day. The claimant also described bowel incontinence. The claimant described spasms that were sometimes severe. The longest he could sit would be one to three hours. The claimant said he was very sensitive to heat and anything above 65 degrees, he becomes very tired. The claimant detailed medications and their side effects. He described having good days and bad days, and on bad days, he would rest. He said he had bad days about nine days in a month. The claimant testified his wife and his daughter did the chores around the house. He said he would try to vacuum but he would have to lay down and would be unable to finish. The claimant testified he would not go grocery shopping by himself. The claimant would not go to the grocery store at all in the summer because it was too hot. He would drive sometimes and he had a handicapped placard, but he limited his driving to short distances. The claimant testified his wife was a nurse and she worked 12-hour shifts three days a week. When his wife is working his 16-year-old daughter is home with him doing homeschooling. He said he did not help his daughter with her homeschooling. The claimant said he was not currently in physical therapy and he would only go when he needed it. He stopped going on daily walks 10-11 months before. In a typical day he would eat, go back to bed, eat, and then go back to bed. He would listen to the radio most of the time. He would do puzzles sometimes but not daily because he would be too tired.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Tr. 23-24.  The ALJ then extensively discussed the medical evidence (both physical and mental), medical opinions, and prior administrative medical findings, ultimately finding that "the claimant's [RFC] is consistent with the claimant's longitudinal medical records and the persuasive opinions and prior administrative findings, discussed above."  Tr. 24-30.

The Court has carefully reviewed Plaintiff's arguments that the ALJ failed to properly evaluate Plaintiff's self-described symptoms and limitations.  *Brief* [#12] at 14-22.  While it appears that ALJ could potentially have made different findings on the record, the Court ultimately agrees with Defendant that the ALJ's decision is supported by substantial evidence and free of reversible legal error.  *See Wilson*, 602 F.3d 1136, 1140 (10th Cir. 2010).  To find otherwise would be to impermissibly reweigh the evidence or substitute the Court's judgment for that of the agency.  *Barnett*, 231 F.3d at 689.

First, the ALJ thoroughly explained why Plaintiff's self-reported limitations were inconsistent with the medical evidence.  Tr. 23-27; *see* 20 C.F.R. § 404.1529(c)(4) (stating that the ALJ must consider conflicts, if any, between a claimant's statements and other evidence).  As outlined by the ALJ, the examination and opinion by Dr. Malmstrom, the prior administrative medical findings from four doctors, and Plaintiff's presentation during examinations all support the ALJ's RFC finding and stand in conflict with Plaintiff's claims of greater intensity, persistence, and limiting effects of his symptoms.  The ALJ did not err by considering this evidence.  *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (stating that the ALJ may consider "the consistency or compatibility of nonmedical testimony with objective medical evidence").

Second, the ALJ noted that Plaintiff left work because the job ended, not due to medical issues.  Tr. 26, 52.  Despite the fact that providers recommended to Plaintiff that

14

he pursue disability, the ultimate reason Plaintiff left his job was not due to medical reasons. The ALJ did not err by considering this evidence. *See* 20 C.F.R. § 404.1529(c)(3) (stating that the ALJ must consider evidence about a claimant's prior work record); *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990) (indicating that a claimant's admission that she did not leave employment as a result of a health-related impairment was relevant to a determination of disability); *Kepler v. Chater*, 68 F.3d 387, 389 n.2 (10th Cir. 1995) (noting that whether a claimant's work history is consistent with an application for benefits may be considered).

Third, the ALJ noted that Plaintiff did not follow all of his treatment advice. Tr. 26. Plaintiff discontinued physical therapy because he "got stronger," and he was not working on his daily puzzles to improve cognition, as encouraged by Dr. Townsend. Tr. 63-65. The ALJ did not err by considering this evidence. *See Huston*, 838 F.2d at 1132 (in assessing credibility, the ALJ may consider "the extensiveness of the attempts (medical or nonmedical) to obtain relief").

Fourth, the ALJ noted that Plaintiff's cognitive abilities as demonstrated during the hearing were not consistent with his claims of greater cognitive issues. Tr. 27. The ALJ did not err by considering this evidence. *See* 20 C.F.R. § 404.1529(c)(3) ("We will consider all of the evidence presented, including . . . observations by our employees and other persons."); *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) ("Although an ALJ may not rely solely on his personal observations to discredit a claimant's allegations, he may consider his personal observations in his overall evaluation of the claimant's [symptoms].").

Fifth, the ALJ noted that Plaintiff is able to drive, which requires complex functions and situational awareness, and could do it without the need for assistive hand controls. Tr. 27. The ALJ did not err by considering this evidence. *See* 20 C.F.R. § 404.1529(c)(3)(i) (stating the ALJ must consider a claimant's activities); *Markham v. Califano*, 601 F.2d 533, 534 (10th Cir. 1979) (stating that activities such as driving do not necessarily establish that a claimant can engage in substantial gainful activity but may be considered in evaluating whether a claimant is disabled); *Talbot v. Heckler*, 814 F.2d 1456, 1462-63 (10th Cir. 1987) ("Ability to drive an automobile, participate in some community affairs, attend school, or to do some work on an intermittent basis does not necessarily establish that a person is able to engage in substantial gainful activity, but such activities may be considered by the [Commissioner], along with medical testimony." (internal quotation marks omitted)). The ALJ here was entitled to consider Plaintiff's activities, including how those activities were performed, and properly did so in making her determinations regarding the consistency of Plaintiff's testimony with medical and other evidence. *Adcock v. Comm'r, SSA*, 748 F. App'x 842, 848 (10th Cir. 2018).

An ALJ need not discuss every single factor in her evaluation of self-described symptoms and limitations, but merely what was found to be probative. *See Trujillo v. Comm'r, SSA*, 818 F. App'x 835, 843 (10th Cir. 2020) ("[A]n ALJ is not required to specifically discuss every factor in [evaluating symptoms]." (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012))). Here, Plaintiff did not file a Reply to contest the arguments made in Defendant's Response [#15]. Based on Defendant's argument and those initially made by Plaintiff in his Opening Brief [#12], the Court finds that the ALJ's findings are supported by the minimal amount required under the

substantial-evidence standard. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (citation and quotation omitted)). Plaintiff appears to argue that the ALJ simply got it wrong. However, despite differing interpretations of the evidence which may have been possible, the ALJ's thorough discussion and conclusion is supported by substantial evidence. *See Washington*, 37 F.3d at 1439.

Accordingly, the Court finds that the ALJ did not commit reversible error in connection with Plaintiff's third argument regarding Plaintiff's self-described symptoms and limitations. *See Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (stating that the Court does not insist on "technical perfection" in an ALJ's decision, but merely that the Court must be able to follow the ALJ's reasoning).

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **AFFIRMED**. Each party shall bear its own costs and attorney's fees.

IT IS FURTHER **ORDERED** that the Clerk of Court shall enter judgment in favor of Defendant and close this case.

Dated: March 27, 2023

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge

17